## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CREE, INC.<br><br>              Plaintiff,<br><br>     v.<br><br>FEIT ELECTRIC COMPANY, INC.,<br><br>FEIT ELECTRIC COMPANY, INC. (CHINA),<br><br>UNITY OPTO TECHNOLOGY CO., LTD.,<br><br>& UNITY MICROELECTRONICS, INC.<br><br>              Defendants. | Case No.:  15-cv-22<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Cree, Inc. ("Cree"), for its Complaint against Defendants Feit Electric Company, Inc. ("Feit Electric"), Feit Electric Company, Inc. (China) ("Feit Electric China") (Feit Electric and Feit Electric China are, collectively, "Feit"), Unity Opto Technology Co., Ltd. ("Unity Opto"), and Unity Microelectronics, Inc. ("Unity Microelectronics") (Unity Opto and Unity Microelectronics are, collectively, "Unity") (all collectively, "Defendants"), alleges as follows:

## THE PARTIES

1.      Cree is a corporation organized and existing under the laws of the State of North Carolina with a principal place of business at 4600 Silicon Drive, Durham, North Carolina, 27703.  Cree also has facilities located in Wisconsin at 9201 Washington Avenue, Racine, Wisconsin 53406 (formerly the headquarters of Ruud Lighting, Inc. ("Ruud Lighting"), which was acquired by Cree in 2011 and subsequently merged with Cree).

2.      On information and belief, Feit Electric is a privately held company organized and existing under the laws of the State of California with a principal place of business at 4901 Gregg Road, Pico Rivera, CA 90660.  Feit Electric's registered agent for service of process in the state of California is Aaron Feit, 4901 Gregg Road, Pico Rivera, CA 90660.

3.      On information and belief, Feit Electric China is a privately held company with its principal place of business at Zone B, 2/F, Xinyu Building, No. 17 Huoju East Road, Huli District Xiamen, China.   On information and belief, Feit Electric China is the China-based affiliate of Feit Electric.

4.      On information and belief, Unity Opto is a publicly traded company based in Taipei, Taiwan, with its principal place of business at 10th Floor, No. 88-8, Sec. 1, Guangfu Road, Sanchong District, New Taipei City 241, Taiwan.

5.      On information and belief, Unity Microelectronics is the USA-based sales and marketing division of Unity Opto, with its principal place of business at 1501 Summit Ave, Suite 10, Plano, Texas 75074.   Unity Microelectronics's registered agent for service of process in the state of Texas is Yi-Huang Lin, 1501 Summit Ave, Suite 10, Plano, Texas 75074.

<u>JURISDICTION AND VENUE</u>

6.      This lawsuit is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 <u>et seq</u>.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

7.      This Court has personal jurisdiction over Defendants under Wis. Stat. §801.05(1)(d), among other provisions.  Defendants have engaged in substantial, continuous, and systematic business within the State of Wisconsin.  Defendants regularly and deliberately engage in and continue to engage in activities that constitute, or result in, using, selling, offering for sale, and/or importing infringing products into the State of Wisconsin and this judicial district.  This Court has personal jurisdiction over the Defendants because, among other things, Defendants conduct business in the State of Wisconsin and in this judicial district and thus enjoy the privileges and protections of Wisconsin law.

8.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and (d) and § 1400(b) because Defendants regularly conduct business in this judicial district and/or because certain of the acts complained of herein occurred in this judicial district.

2

## BACKGROUND

9.     Cree is a market-leading innovator engaged in the design, development, manufacture, and sale of light emitting diodes ("LED"), lighting products using LEDs, and semiconductor products for RF applications.

10.     Cree was founded in 1987 as a manufacturer of silicon carbide (SiC) wafers. Building on its success with SiC, Cree began developing innovative LEDs for use in a variety of applications and introduced numerous LEDs in the 1990s and 2000s.

11.     In 2004, Cree launched its XLamp® LED product line.  XLamp LEDs were the first LEDs bright enough to be used in general-illumination applications such as desk lamps, ceiling fixtures, and street lights.  These types of LEDs are now called "lighting-class" LEDs. Today, Cree's XLamp® LEDs continue to set the industry standards for brightness and efficiency.

12.     In August 2011, Cree acquired all of the outstanding capital stock of Ruud Lighting, which was headquartered in Racine, Wisconsin.

13.     Cree's Ruud Lighting subsidiary, which was engaged in the design, manufacture, and sale of LED lighting products, merged into Cree effective January 1, 2013. Cree continues to design, develop, manufacture, and sell LED lighting products in Wisconsin.

14.     In March 2013, Cree introduced its first general purpose (A-type) LED bulb. Cree's "Gen-1" A-type bulb received numerous accolades and was viewed as a ground-breaking advancement by the lighting industry.

15.     In October 2013, Cree announced that two of its household LED bulbs had qualified for "Energy Star" rating by the United States Environmental Protection Agency ("EPA"), leading the way for them to qualify for rebates from utility products and effectively lowering the prices of the bulbs to compete with traditional incandescent and compact fluorescent lamp ("CFL") bulbs.

16.     On information and belief, Feit makes, offers to sell in, sells for importation into, and/or imports into the United States LED products such as LED bulbs.

17.     On information and belief, Unity, on behalf of Feit, makes, offers to sell in, sells for importation into, and/or imports into the United States LED products such as LED bulbs that are marketed and sold under the Feit brand name.

18.     The ENERGY STAR Program was established in 1992 by the EPA pursuant to section 103(g) of the Clean Air Act.  The EPA later established a voluntary ENERGY STAR certification program, including testing and third-party certification of certain energy-efficient products such as household appliances.

19.     The ENERGY STAR® logo has become the national symbol for energy efficiency, guiding consumers to purchase energy-efficient products that are high-quality substitutes for the less efficient products consumers have come to rely upon.

20.     In 1997, the ENERGY STAR Program expanded into lighting products.  In order for lighting products to use the ENERGY STAR® logo, they must pass rigorous tests in an EPA-recognized laboratory and be certified by a third-party certification body.  These requirements ensure that LED bulbs promote energy efficiency while providing consumers with high-quality, long-lasting substitutes for incandescent light bulbs.

21.     Cree is a partner in the ENERGY STAR program and many of its LED bulbs qualify for and are sold with the ENERGY STAR® logo.

22.     The ENERGY STAR program requirements for LED bulbs are contained in the Program Specification for Lamps (Light Bulbs) Eligibility Criteria Version 1.1 ("Eligibility Criteria").  These requirements address not only energy efficiency, but also impose quality standards on the performance of LED bulbs, including omnidirectionality, lumen output, color rendering and consistency, bulb life, and lumen maintenance.  Section 1.1 of the Eligibility Criteria groups bulbs into three categories (omnidirectional, directional, and decorative) based upon their purpose and standard shape.

4

23.     The Eligibility Criteria contain several requirements that vary depending upon the type of bulb being certified.  For instance, the light output requirements in Section 9.2 of the Eligibility Criteria require that general purpose A-shape LED "100 watt equivalent" bulbs must initially output from 1,600 – 1,999 lumens of light, while a globe (G) shape decorative bulb that references a 100 watt incandescent bulb must only output 650 – 1,099 lumens.

24.     All general purpose bulbs must uniformly distribute light about the bulb in order to qualify for ENERGY STAR certification.  As the EPA explains on the ENERGY STAR website:

> LEDs are "directional" sources, which means they emit light in a specific direction, unlike incandescent and compact fluorescent bulbs, which emit light and heat in all directions.  For this reason, LED lighting is able to use light and energy more efficiently in many applications.  However, it also means that sophisticated engineering is needed to produce an LED light bulb that shines light all around like an incandescent A-shape bulb.

> LED bulbs that have earned the ENERGY STAR are subject to very specific requirements designed to replicate the experience you are used to with a standard A-type bulb, so they can be used for a wide variety of applications.  As the graphic on the right [reproduced below] demonstrates, a general purpose LED bulb that does not qualify for the ENERGY STAR may not distribute light in all directions and could prove to be a disappointment if used in a table lamp.



*Graphic from ENERGY STAR website*

25.     Standard A-shape bulbs like Cree's A19 LED bulbs shown below must pass the "omnidirectional luminous intensity distribution" requirement in section 9.5 of the Eligibility Criteria to use the ENERGY STAR® logo.



*Cree A19 LED Bulbs*

26.     The omnidirectional luminous intensity distribution requirement does not apply to directional bulbs such as Cree's BR30 bulb shown below.   Unlike general purpose bulbs, directional bulbs are designed to direct light in a particular direction, such as downward from the ceiling.



*Cree BR30 directional LED Bulb*

27.     Decorative bulbs, such as the bulb shapes below, serve an ornamental purpose and are typically not designed to broadcast light uniformly about the bulb.  Accordingly, they are

held to a different, less demanding luminous intensity distribution requirement than general purpose bulbs.



*Standard Decorative Bulb Shapes*[1]

28.     To meet the ENERGY STAR omnidirectional luminous intensity distribution requirements in Section 9.5 of the Eligibility Criteria, a general purpose LED bulb must be tested using a prescribed measurement method.  The LED bulb's light intensity is measured by the testing lab at specified locations ("candela points") surrounding the bulb, as shown in the figure below.



*Diagram from Appendix I of the Eligibility Criteria*

---

[1]    "Decorative Lamp" is defined in Section 4 of the Eligibility Criteria as "a lamp with a candle-like or globe shape envelope including shapes B, BA, C, DA, DC, G and F as defined in ANSI C79.1-2002."

29.     The measurements taken, as a minimum, at each specified candela point along vertical and horizontal planes are averaged.  To pass the omnidirectional luminous intensity distribution requirements of Section 9.5 of the Eligibility Criteria, at least 90 percent of the candela point measurements can vary no more than 25 percent from the average of all measured values in the zone of 0 to 135 degrees from the polar axis.  In addition, at least 5 percent of total lumens must be emitted in the 135 to 180 degree zone.

30.     As described in Count XI below, Defendants falsely advertise certain of their A-shape LED bulbs as meeting the omnidirectional luminous intensity distribution requirement by using the ENERGY STAR® logo on their packaging.

31.     Section 9.2 of the ENERGY STAR Eligibility Criteria specifies ranges for reported light output so that comparisons can be made to the light output from an incandescent bulb.  For example, an omnidirectional LED bulb rated to have the equivalency of a 100 watt incandescent bulb must have an initial output of 1,600 – 1,999 lumens to qualify for use of the ENERGY STAR® logo.

32.     Section 9.8 of the Eligibility Criteria requires that the color of light emitted from an LED bulb remain stable over time and requires lengthy (6,000 hour) testing to ensure that the bulb's chromaticity change is minimal.

33.     Similarly, Section 10.1 of the Eligibility Criteria requires that an LED bulb maintain a large portion of its original brightness over its life, while Section 10.2 requires that a general purpose LED bulb last at least 25,000 hours.  These qualities ensure that consumers who purchase ENERGY STAR labeled bulbs receive a long-lasting and consistent lighting experience.  Both of these requirements require lengthy testing.

34.     As described in Count XI below, Defendants may also falsely advertise certain of their A-shape LED bulbs as meeting the light output, color maintenance, and lumen maintenance requirements in Sections 9 and 10 of the ENERGY STAR Eligibility Criteria by using the ENERGY STAR® logo on their packaging.

35.     Use of the ENERGY STAR® logo confers a powerful governmental endorsement, signifying energy efficiency, cost savings, and long-lasting performance.  In a recent survey, 87% of households recognized the ENERGY STAR® logo when shown the label, and 80% had a high or general understanding of the label's purpose.[2]

36.     ENERGY STAR certification also provides a significant cost saving to consumers through local electric utility subsidies provided to energy-efficient, ENERGY STAR-qualified products.  Most of these subsidies are made available at the point-of-sale, meaning that a consumer can purchase the bulb at a retail store such as Home Depot and pay a subsidized price at checkout.  That price reduction can make highly efficient LED bulbs price-competitive with standard incandescent or CFL bulbs.   For example, a Cree 60 watt replacement A19 LED bulb sold at Home Depot in Alexandria, Virginia is priced at $9.97 because the local Virginia utility does not provide subsidies.  In Washington, D.C., however, the same LED bulb sells at Home Depot for $3.98, due to local utility subsidies.  These subsidized prices drive sales of LED bulbs, and ENERGY STAR-certified bulbs derive a tremendous (up to 60%) competitive advantage over bulbs that do not qualify to use the ENERGY STAR® logo.

37.     As described in Count XI below, Defendants' false and misleading advertising, including wrongful use of the ENERGY STAR® logo and receipt of undeserved subsidies, has caused and threatens to cause substantial injury to Cree's ENERGY STAR-certified LED bulbs business.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 6,657,236

38.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

39.     Cree owns by assignment the right, title and interest in United States Patent No. 6,657,236 ("the '236 patent"), titled "Enhanced Light Extraction in LEDs Through the Use of

---

[2]   *See* http://www.energystar.gov/sites/default/uploads/about/old/files/2013%20CEE%20 Report_508%20compliant.pdf.

Internal and External Optical Elements," which issued on Dec. 2, 2003, naming Brian Thibeault, Michael Mack, and Steven DenBaars as co-inventors.  A true and correct copy of the '236 patent is attached as Exhibit A.

40.     As the owner of the '236 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '236 patent.

41.     The '236 patent relates generally to the use of light extraction structures to enhance light extraction in LEDs.  The '236 patent discloses novel light extraction structures that provide surfaces for reflecting, refracting or scattering light into directions that are more favorable for the light to escape, as well as disperser layers that provide scattering centers for light.  As a result, the new LED has an increased probability of light escaping, improving light emission.

42.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 1-2, 4-6, 8, 11-12, 14-16, 20, 23-26, 28 and 32 of the '236 patent through the manufacture, offering for sale, sale, and/or importation of LED products.  By way of example and without limitation, the Feit/Unity 40W BPAG500DM bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '236 patent.

43.     On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

44.     As a result of Defendants' infringement of the '236 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

45.     On information and belief, Defendants' acts of infringement of the '236 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless

Defendants are enjoined by this Court from continuing their infringement of the '236 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights. Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

46.     On information and belief, Defendants have had actual knowledge of the '236 patent since at least the time of receipt of this complaint.  On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.


## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 6,885,036

47.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

48.     Cree owns by assignment the right, title and interest in United States Patent No. 6,885,036 ("the '036 patent"), titled "Scalable LED with Improved Current Spreading Structures," which issued on Apr. 26, 2005, naming Eric J. Tarsa, Brian Thibeault, James Ibbetson, and Michael Mack as co-inventors.  A true and correct copy of the '036 patent is attached as Exhibit B.

49.     As the owner of the '036 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '036 patent.

50.     The '036 patent generally relates to current spreading structures for LEDs.  The '036 patent discloses a novel LED layout with improved current spreading structures that improve current spreading in p-type (a layer with excess holes) and n-type (a layer with excess electrons) layers for both small and large LEDs.  As a result, the injection of electrons and holes into the LED's active layer is improved, thereby improving its light emitting efficiency and reducing its series resistance and heating.

51.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 1-7, 9-11 and 13 of the '036 patent through the manufacture, offering for sale, sale, and/or importation of LED products.  By way of example and without limitation, the Feit/Unity 40W BPAG500DM bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '036 patent.

52.     On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

53.     As a result of Defendants' infringement of the '036 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

54.     On information and belief, Defendants' acts of infringement of the '036 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '036 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights.  Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

55.     On information and belief, Defendants have had actual knowledge of the '036 patent since at least the time of receipt of this complaint.  On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 6,614,056

56.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

57.     Cree owns by assignment the right, title and interest in United States Patent No. 6,614,056 ("the '056 patent"), titled "Scalable LED with Improved Current Spreading Structures," which issued on Sept. 2, 2003, naming Eric J. Tarsa, Brian Thibeault, James Ibbetson, and Michael Mack as co-inventors.  A true and correct copy of the '056 patent is attached as Exhibit C.

58.     As the owner of the '056 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '056 patent.

59.     The '056 patent generally relates to current spreading structures for LEDs.  The '056 patent discloses a novel LED layout with improved current spreading structures that improve current spreading in p-type (a layer with excess holes) and n-type (a layer with excess electrons) layers for both small and large LEDs.  As a result, the injection of electrons and holes into the LED's active layer is improved, thereby improving its light emitting efficiency and reducing its series resistance and heating.

60.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 1-4, 6 and 10 of the '056 patent through the manufacture, offering for sale, sale, and/or importation of LED products.  By way of example and without limitation, the Feit/Unity 40W BPAG500DM bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '056 patent.

61.     On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

62.     As a result of Defendants' infringement of the '056 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

63.     On information and belief, Defendants' acts of infringement of the '056 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '056 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights. Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

64.     On information and belief, Defendants have had actual knowledge of the '056 patent since at least the time of receipt of this complaint.  On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 7,312,474

65.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

66.     Cree owns by assignment the right, title and interest in United States Patent No. 7,312,474 ("the '474 patent"), titled "Group III Nitride Based Superlattice Structures," which issued on Dec. 25, 2007, naming David Todd Emerson, James Ibbetson, Michael John Bergmann, Kathleen Marie Doverspike, Michael John O'Loughlin, Howard Dean Nordby, Jr., and Amber Christine Abare as co-inventors.  A true and correct copy of the '474 patent is attached as Exhibit D.

67.     As the owner of the '474 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '474 patent.

68.     The '474 patent relates generally to the use of a Group III nitride based superlattice in an LED.  The '474 patent discloses a novel LED including a Group III nitride based superlattice and a Group III nitride based active region on the superlattice, which improves light emission and deters silicon impurities in the active region.  As a result, the LED has more consistent performance and better uniformity of light emission.

69.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 1-3, 6-7 and 15-21 of the '474 patent through the manufacture, offering for sale, sale, and/or importation of LED products.  By way of example and without limitation, the Feit/Unity 40W BPAG500DM bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '474 patent.

70.     On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

71.     As a result of Defendants' infringement of the '474 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

72.     On information and belief, Defendants' acts of infringement of the '474 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '474 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights.  Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

73.     On information and belief, Defendants have had actual knowledge of the '474 patent since at least the time of receipt of this complaint.  On information and belief, Defendants'

continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 7,976,187

74.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

75.     Cree owns by assignment the right, title and interest in United States Patent No. 7,976,187 ("the '187 patent"), titled "Uniform Intensity LED Lighting System," which issued on July 12, 2011, naming Russell G. Villard as the sole inventor.  A true and correct copy of the '187 patent is attached as Exhibit E.

76.     As the owner of the '187 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '187 patent.

77.     The '187 patent generally relates to LED lighting fixtures with improved light distribution.  Early LED-based fixtures offered improved efficiency over incandescent bulbs, but were unable to replicate their omni-directional light distribution due to the highly directional emission patterns of individual LEDs.  The '187 patent discloses LED lighting fixtures that use multiple LED chips positioned at predetermined angles with respect to one another to achieve uniform and omni-directional light distribution comparable to that of incandescent bulbs.

78.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 1-6 and 26-30 of the '187 patent through the manufacture, offering for sale, sale, and/or importation of LED products.  By way of example and without limitation, the Feit/Unity 60W BPCEAG800/927 bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '187 patent.

79.     On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

80.     As a result of Defendants' infringement of the '187 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

81.     On information and belief, Defendants' acts of infringement of the '187 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '187 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights. Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

82.     On information and belief, Defendants have had actual knowledge of the '187 patent since at least the time of receipt of this complaint.  On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 8,766,298

83.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

84.     Cree owns by assignment the right, title and interest in United States Patent No. 8,766,298, titled "Encapsulant Profile for Light Emitting Diodes," which issued on July 1, 2014, naming Christopher P. Hussell, Michael J. Bergmann, Brian T. Collins, and David T. Emerson as co-inventors.  A true and correct copy of the '298 patent is attached as Exhibit F.

85.     As the owner of the '298 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '298 patent.

86.     The '298 patent generally relates to an improved package for LEDs.  LED packages often include an encapsulant material covering the LED and containing phosphors or dies to produce light of a desired wavelength.  The '298 patent discloses a novel geometry for the encapsulant material, resulting in improved distribution and flux of light emanating from the LED package.

87.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 1-5 of the '298 patent through the manufacture, offering for sale, sale, and/or importation of LED products.  By way of example and without limitation, the Feit/Unity 40W BPCEAG/500 bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '298 patent.

88.     On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

89.     As a result of Defendants' infringement of the '298 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

90.     On information and belief, Defendants' acts of infringement of the '298 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '298 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights.  Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

91.     On information and belief, Defendants have had actual knowledge of the '298 patent since at least the time of receipt of this complaint.  On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT VII

## INFRINGEMENT OF U.S. PATENT NO. 8,596,819

92.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

93.     Cree owns by assignment the right, title and interest in United States Patent No. 8,596,819 ("the '819 patent"), titled "Lighting Device and Method of Lighting," which issued on Dec 3, 2013, naming Gerald H. Negley, Antony Paul Van de Ven, and Thomas G. Coleman as co-inventors.  A true and correct copy of the '819 patent is attached as Exhibit G.

94.     As the owner of the '819 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '819 patent.

95.     The '819 patent generally relates to highly efficient LED lighting devices. Efficiency of LED-based devices is measured in terms of brightness output (in lumens) per power input (in watts).  The inventors of the '819 patent developed LED-based devices capable of operating at and above 60 lumens per watt, an efficiency that prior-art devices were unable to achieve.  The LED-based devices disclosed in the '819 patent achieve this efficiency while producing light at commercially desirable color-temperature and color-rendering values.

96.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 1-4, 6-12, 19, 22-28, and 52-59 of the '819 patent through the manufacture, offering for sale, sale, and/or importation of LED products.[3]  By way of example and without limitation, the

---

[3]   The application that issued as the '819 patent is subject to a certificate of correction that fixes a typographical error in asserted claims 57-59.  Cree intends to move to amend the complaint to assert claims 57-59, as corrected, after the certificate issues.

Feit/Unity 40W BPCEAG/500 bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '819 patent.

97.    On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

98.    As a result of Defendants' infringement of the '819 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

99.    On information and belief, Defendants' acts of infringement of the '819 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '819 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights. Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

100.    On information and belief, Defendants have had actual knowledge of the '819 patent since at least the time of receipt of this complaint.  On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT VIII

## INFRINGEMENT OF U.S. PATENT NO. 8,628,214

101.    Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

102.    Cree owns by assignment the right, title and interest in United States Patent No. 8,628,214 ("the '214 patent"), titled "Lighting Device and Lighting Method," which issued on

Jan. 14, 2014, naming Gerald H. Negley, Antony Paul Van de Ven, and Thomas G. Coleman as co-inventors.  A true and correct copy of the '214 patent is attached as Exhibit H.

103.    As the owner of the '214 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '214 patent.

104.    The '214 patent generally relates to highly efficient LED lighting devices. Efficiency of LED-based devices is measured in terms of brightness output (in lumens) per power input (in watts).  The inventors of the '214 patent developed LED-based devices capable of operating at and above 60 lumens per watt, an efficiency that prior-art devices were unable to achieve.  The LED-based devices disclosed in the '214 patent achieve this efficiency while producing light at commercially desirable color-temperature and color-rendering values.

105.    On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, at least claims 7-8, 14-19, and 24-25 of the '214 patent through the manufacture, offering for sale, sale, and/or importation of LED products.[4]  By way of example and without limitation, the Feit/Unity 40W BPCEAG/500 bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '214 patent.

106.    On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

107.    As a result of Defendants' infringement of the '214 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

---

[4]    The application that issued as the '214 patent is subject to a certificate of correction that fixes a typographical error in asserted claim 8.  Cree intends to move to amend the complaint to assert claim 8, as corrected, after the certificate issues.

108.    On information and belief, Defendants' acts of infringement of the '214 patent will continue after service of this Complaint unless enjoined by the Court.   Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '214 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights. Cree has no adequate remedy at law for these wrongs and injuries.   Thus, Cree is entitled to a permanent injunction against further infringement.

109.    On information and belief, Defendants have had actual knowledge of the '214 patent since at least the time of receipt of this complaint.   On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT IX

## INFRINGEMENT OF U.S. DESIGN PATENT NO. D653,366

110.    Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

111.    Cree owns by assignment the right, title and interest in United States Design Patent No. D653,366 ("the '366 patent"), titled "LED Lamp," which issued on Jan. 31, 2012, naming Long Larry Le, James Michael Lay, and Randolph Cary Demuynck as co-inventors.   A true and correct copy of the '366 patent is attached as Exhibit I.

112.    As the owner of the '366 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '366 patent.

113.    The '366 patent discloses an ornamental design for a LED lamp.

114.    On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, the sole claim of the '366 patent through the manufacture, offering for sale, sale, and/or importation of LED products.   By way of example and without limitation, the Feit/Unity BPAG1600DM

bulb is an infringing product.  Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '366 patent.

115.    On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

116.    As a result of Defendants' infringement of the '366 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

117.    On information and belief, Defendants' acts of infringement of the '366 patent will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '366 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights. Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further infringement.

118.    On information and belief, Defendants have had actual knowledge of the '366 patent since at least the time of receipt of this complaint.  On information and belief, Defendants' continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

## COUNT X

### INFRINGEMENT OF U.S. DESIGN PATENT NO. D660,990

119.    Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

120.    Cree owns by assignment the right, title and interest in United States Design Patent No. D660,990 ("the '990 patent"), titled "LED Lamp," which issued on May 29, 2012,

naming Long Larry Le, Paul Pickard, and James Michael Lay as co-inventors.   A true and correct copy of the '990 patent is attached as Exhibit J.

121.   As the owner of the '990 patent, Cree is authorized and has standing to bring legal action to enforce all rights arising under the '990 patent.

122.   The '990 patent discloses an ornamental design for a LED lamp.

123.   On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, the sole claim of the '990 patent through the manufacture, offering for sale, sale, and/or importation of LED products.   By way of example and without limitation, the Feit/Unity BPAG1600DM bulb is an infringing product.   Cree reserves the right to contend that additional LED products manufactured, offered for sale, sold, and/or imported by Defendants infringe the '990 patent.

124.   On information and belief, these infringing products are manufactured abroad and imported into, sold for importation into, and/or sold after importation into the United States by or on behalf of Defendants.

125.   As a result of Defendants' infringement of the '990 patent, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

126.   On information and belief, Defendants' acts of infringement of the '990 patent will continue after service of this Complaint unless enjoined by the Court.   Thus, unless Defendants are enjoined by this Court from continuing their infringement of the '990 patent, Cree will suffer additional irreparable harm and impairment of the value of its patent rights. Cree has no adequate remedy at law for these wrongs and injuries.   Thus, Cree is entitled to a permanent injunction against further infringement.

127.   On information and belief, Defendants have had actual knowledge of the '990 patent since at least the time of receipt of this complaint.   On information and belief, Defendants'

24

continued manufacture, offer for sale, sale, and/or importation into the United States of infringing LED products constitutes continuing willful infringement.

**COUNT XI**

**False and Misleading Advertising in Violation of
Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

128.    Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

129.    Many of Defendants' LED bulbs are advertised as being qualified to use the ENERGY STAR® logo.  For example, Feit Electric's website contains the advertisement below:



*Selection from www.feit.com*

130.    Defendants' advertising, through words and images, not only displays the ENERGY STAR® logo, but specifically highlights their LED bulbs' alleged omnidirectionality. For example, some of Defendants' LED bulb packaging contains an image comparing table lamps using a "STANDARD DIRECTIONAL LED" to an "OMNI DIRECTIONAL LED" that mimics the ENERGY STAR graphic shown in paragraph 23 above.

25



*Image from Defendants' packaging*

131.   Cree tested several of Defendants' LED bulbs in its EPA-qualified testing laboratory.  Despite displaying an ENERGY STAR® logo and claiming omnidirectionality, certain of the tested bulbs failed the ENERGY STAR Luminous Intensity Distribution requirement (Section 9.5) by a wide margin.  All of the bulbs that failed this requirement provided insufficient light toward the base of the bulb, meaning that if the bulb is installed in a table lamp, it will provide insufficient light down toward the table (like the lamp shown on the left in the above image of Defendants' packaging), which in ENERGY STAR's words, "could prove to be a disappointment" to the consumer.  These LED bulbs were marked with the ENERGY STAR® logo even though they fail to satisfy the ENERGY STAR requirements.

132.   In certain instances, Defendants' use of the ENERGY STAR® logo appears to be intentionally misleading.  As described in the Background section above, the luminous distribution requirements in Section 9.5 of the Eligibility Criteria are much more demanding for general purpose A-shape bulbs than for decorative G-shape bulbs.  Apparently aware that certain of its A-shape LED bulbs fail the ENERGY STAR Luminous Intensity Distribution requirement applicable to such bulbs, Defendants advertise those bulbs as "decorative" (*e.g.* G-shaped (globe) bulbs) – misleading both the ENERGY STAR certification body and consumers.  As shown below, however, there is no doubt that Defendants' bulbs are A-shaped:

  

*Comparison between Defendants' LED Bulbs and Standard A and G bulb shapes*

133.    A decorative globe bulb is required to have an "essentially spherical" shape such that the ratio of its maximum overall diameter to maximum overall length is greater than 0.80.  This distinction is exemplified by the following images on Unity Opto's website:

 

*Selections from www.unityopto.com.tw*

134.    By misrepresenting the shape and purpose of certain of its bulbs to the ENERGY STAR certification body, Defendants appear to have obtained certification for products that fail the luminous intensity distribution requirements applicable to all A-shape bulbs.

135.    On September 1, 2014, the EPA clarified the Eligibility Requirements specifically to exclude G-shaped decorative LED bulbs "that could be mistaken for a general purpose A-lamp replacement" from ENERGY STAR unless they can pass the omnidirectional

luminous intensity distribution requirements applicable to general purpose bulbs.  Indeed, the EPA made clear that any G-shape bulbs previously certified under the decorative-type requirements could not use the ENERGY STAR® logo after September 1, 2014.

136.    Despite this clarification, Defendants appear to have continued importing and selling LED bulbs falsely advertised as "DECORATIVE" with the ENERGY STAR® logo, misleading the public into purchasing A-shaped LED replacement bulbs that not only fail the ENERGY STAR Eligibility Criteria applicable to such bulbs, but also fail to provide their additionally advertised light distribution.  For example, two of Defendants' LED bulbs with the ENERGY STAR® logo that have nearly identical shape and appearance, as shown below, were purchased at retail outlets in December 2014:



*Defendants' Product Nos. BPAG500DM/LED and BPAGOM450/LED*

137.    The packaging for the bulb on the left includes the word "DECORATIVE" in small letters in the bottom left corner, but this bulb plainly appears to be the same shape as the bulb on the right, which is labeled "A19" on the top left part of the packaging.  Both packages display the ENERGY STAR® logo.   Both bulbs must therefore pass the omnidirectional luminous intensity distribution requirement in Section 9.5 of the ENERGY STAR Eligibility Criteria.  However, in Cree's testing, the bulb on the left (labeled "DECORATIVE") failed this

requirement by a large margin.  The bulb on the right passed.  Consumers are not informed of the difference.  On the contrary, consumers are shown the ENERGY STAR® logo and are informed that the bulb offers "IMPROVED LIGHT DISTRIBUTION" below a graphic image showing arrows of light pointing all around the bulb.

138.   Internal testing by Cree suggests that Defendants' ENERGY STAR labeled LED bulbs may also fail several other applicable requirements in the Eligibility Criteria, including Section 9.2 light output requirements, Section 9.8 color maintenance requirements, and Section 10.1 lumen maintenance requirements.  If these early indications prove true in further testing, certain of Defendants' ENERGY STAR labeled LED bulbs are not only falsely labeled for these additional reasons, but also mislead consumers about the bulbs' brightness, color, and performance over time.

139.   Defendants misrepresent the nature, characteristics, and qualities of certain of their LED bulbs by at least falsely and misleadingly advertising them as ENERGY STAR compliant, and of providing omnidirectional light distribution, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the federal common law of unfair competition. Defendants' misrepresentations appear to be intentional at least because they have misrepresented the purpose and shape of their bulbs to obtain ENERGY STAR certification. Defendants' false advertising misleads consumers into purchasing products that fail to perform as advertised and misleads electric utilities into providing substantial subsidies to non-compliant products, causing substantial injury and threatening to cause substantial injury to Cree's ENERGY STAR-certified LED bulbs business.

140.   Defendants' falsely advertised LED bulbs mislead consumers into thinking that Defendants' inferior bulbs are equivalent to Cree's bulbs in terms of efficiency or quality, directly resulting in substantial injury to Cree's ENERGY STAR-certified LED bulbs business through lost sales, especially because falsely advertised bulbs can be manufactured with cheaper, lower quality components and sold at lower prices.

141.    Defendants' falsely advertised LED bulbs poison the well of this relatively new market.  When Defendants' products fail to perform as advertised, consumers develop a negative impression not only of Defendants' products, but on LED bulbs generally.   These negative impressions caused by Defendants' false and misleading advertising cause substantial injury to demand for LED bulbs, including Cree's LED bulbs.  If a consumer's first experience with an LED bulb is unsatisfactory because Defendants' bulb fails to provide omnidirectional light (for example, making reading under a lamp more difficult because the light is directed upward from the bulb and not down toward the book), or fails to maintain its brightness or changes light color over time, the consumer may decide not to buy any LED bulbs in the future.  This is a problem that ENERGY STAR certification is designed to avoid, and consumers trust the ENERGY STAR brand.  If Defendants' bulbs falsely labeled with the ENERGY STAR® logo continue to be widely available in the U.S. market, the ENERGY STAR brand will be substantially diluted, causing substantial injury to Cree's ENERGY STAR-certified LED bulbs business.

142.    Defendants' LED bulbs falsely labeled with the ENERGY STAR® logo that unfairly receive utility subsidies cause direct and substantial injury to Cree's ENERGY STAR-certified LED bulbs business.  For example, as seen in the image below, in Washington, D.C., local utility rebates allow consumers to buy 40 watt equivalent ENERGY STAR-certified Cree A19 bulbs at the local Home Depot for $3.98 each, instead of the regular price of $9.97 each.  Similarly, because of utility subsidies, a consumer shopping at the Washington, D.C. Costco store can buy a Feit 40 watt equivalent bulb labeled with the ENERGY STAR® logo for $4.00 each ($15.99 for a four pack), whereas without the subsidy, the bulb would sell for $6.00 each ($23.99 for a four pack).



143.    Defendants' LED bulbs falsely labeled with the ENERGY STAR® logo that receive utility subsidies cause direct and substantial injury to Cree's business in its ENERGY STAR-certified LED bulbs that compete with those falsely labeled bulbs.  For example, if the Feit bulbs shown in the image above did not receive the utility rebate, they would be sold at $6 each and would not be price-competitive with Cree's ENERGY STAR-qualified LED bulbs.

144.    Defendants' literally false, deceptive, and misleading representations of fact violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

145.    As a result of Defendants' false and misleading advertising, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial.

146.    On information and belief, Defendants' acts of false and misleading advertising will continue after service of this Complaint unless enjoined by the Court.  Thus, unless Defendants are enjoined by this Court from continuing their false and misleading advertising, Cree will suffer additional irreparable harm.  Cree has no adequate remedy at law for these wrongs and injuries.  Thus, Cree is entitled to a permanent injunction against further false and misleading advertising.

## COUNT XII

### Common Law Unfair Competition

147.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

148.     Defendants' false and misleading advertising and related actions constitute intentional unfair competition in violation of Cree's rights under the common law of unfair competition of the State of Wisconsin, causing injury to Cree and its products' sales, business relationships, reputation, and goodwill.

149.     As a result of Defendants' false and misleading advertising, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial.

150.     Defendants have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure Cree.   Cree has no adequate remedy at law for such injuries.   Thus, Cree is entitled to a permanent injunction against further false and misleading advertising.

## COUNT XIII

### Common Law Unjust Enrichment

151.     Cree repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth herein.

152.     As a result of Defendants' false and misleading advertising and related actions, Defendants benefited from increased sales, profits, market share, reputation, and goodwill, some of which Cree would otherwise have earned but for Defendants' actions.

153.     As a result of Defendants' false and misleading advertising, Cree has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial.

154.     Defendants knew, or reasonably should have known, that the increased sales, profits, market share, reputation, and goodwill that they received resulted directly from their

literally false, deceptive, and misleading advertising. Defendants have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure Cree. Cree has no adequate remedy at law for such injuries. Thus, Cree is entitled to a permanent injunction against further false and misleading advertising.

155.   It would be unjust for Defendants to retain the benefits conferred upon them as a result of their literally false, deceptive, and misleading advertising, and Defendants' continuance of such practices while knowing of the resulting harm.

## PRAYER FOR RELIEF

156.   WHEREFORE, Cree prays for relief against Defendants (and their subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, and employees) as follows:

157.   That Defendants be ordered to pay damages adequate to compensate Cree for Defendants' infringement of each of the patents-in-suit pursuant to 35 U.S.C. § 284, and for Defendants' false and misleading advertising of the qualities or compliance with ENERGY STAR requirements of Defendants' LED products;

158.   That Defendants be ordered to pay treble damages pursuant to 35 U.S.C. § 284 for their willful infringement of each of the patents-in-suit;

159.   That Defendants be ordered to pay attorneys' fees pursuant to 35 U.S.C. § 285 for its infringement;

160.   That Defendants, their officers, agents, servants, employees, and those persons acting in active concert or in participation with them be enjoined from further infringement pursuant to 35 U.S.C. § 283, and from further false and misleading advertising of the qualities or compliance with ENERGY STAR requirements of Defendants' LED products;

161.   That Defendants be ordered to pay pre-judgment interest, post-judgment interest, and all costs associated with this action; and

162.    That Cree be granted such other and additional relief as the Court deems just and proper.

## JURY DEMAND

Cree requests a trial by jury.


Dated:  January 12, 2015                         Respectfully submitted,

                                                 s/ *Christopher G. Hanewicz*

                                                 Christopher G. Hanewicz
                                                 CHanewicz@perkinscoie.com
                                                 Michelle M. Umberger
                                                 MUmberger@perkinscoie.com
                                                 Gabrielle E. Bina
                                                 GBina@perkinscoie.com
                                                 PERKINS COIE LLP
                                                 One East Main Street, Suite 201
                                                 Madison, WI 53703-5118
                                                 Tel.: (608) 663-7460
                                                 Fax: (608) 663-7499

                                                 Raymond N. Nimrod (*pro hac vice*)
                                                 Richard W. Erwine (*pro hac vice*)
                                                 (*pro hac vice* motions forthcoming)
                                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                 51 Madison Avenue, 22nd Floor
                                                 New York, NY 10010
                                                 Tel.: (212) 849-7000
                                                 Fax: (212) 849-7100

                                                 *Counsel for Plaintiff Cree, Inc.*